* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Parties are subject to the North Carolina Workers' Compensation Act.
2. The Parties agree that there was an employee-employer relationship between the employer and the employee on December 10, 2002.
3. The Parties agree that the carrier on risk was Liberty Mutual Insurance Company.
4. The Parties agree that plaintiff experienced a compensable injury by accident on December 10, 2002.
5. Medical records, plaintiff's personnel file, and lay testimony were admitted into evidence at the hearing. The Parties also stipulated that plaintiff's average weekly wage was $320.00 at all relevant times.
6. After the hearing the Parties took the deposition of Dr. David Mackel, and the Deputy Commissioner Holmes received and entered into evidence the transcript of his testimony and the accompanying exhibits.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Holmes, plaintiff was a 42-year-old female who had been employed with the defendant-employer for approximately two months prior to her date of injury.
2. On December 10, 2002, plaintiff was employed by defendant as a Deli Clerk with an average weekly wage of $320.00.
3. On December 10, 2002 plaintiff slipped on a wet floor. Her left leg slid and her knee twisted. She caught herself before she actually fell on her knee. Plaintiff noticed that she developed pain and swelling in her left knee over the remainder of her shift. Plaintiff went to Pardee Memorial Hospital where x-rays were taken. She was given pain medication and a leg immobilizer.
4. Two days later plaintiff returned to Pardee Memorial Hospital and demanded that she receive an MRI of her left knee. The emergency room doctor referred her to Dr. David Mackel.
5. Dr. David Mackel is an expert orthopedic surgeon with more than twenty years of practice. Dr. Mackel provided care to plaintiff from December 13, 2002 through May 1, 2003, and then had an additional follow-up visit with plaintiff on January 4, 2005.
6. Dr. Mackel obtained a MRI of plaintiff's left knee. This MRI was interpreted by the radiologist and by Dr. Mackel as showing no ligament tears and no menisci tears. Based on that MRI, and on his physical examination of plaintiff, Dr. Mackel diagnosed plaintiff as suffering from prepatellar bursitis and a popliteal cyst not related to the work injury. He did not believe that she needed any knee surgery, and instead recommended physical therapy with a particular focus on quad muscle strengthening.
7. As of January 22, 2003, Dr. Mackel felt that plaintiff had a 0% permanent partial impairment of her left knee. Plaintiff's medical providers have assigned no further impairment ratings. Dr. Mackel issued the above impairment rating so that plaintiff could receive a second opinion from another doctor.
8. Plaintiff was unhappy with Dr. Mackel's finding that she was not a surgical candidate. She also felt the MRI must be incorrect. Therefore, she requested a second opinion.
9. Plaintiff underwent a second opinion evaluation by Dr. Jay Jansen on March 4, 2003. Dr. Jansen agreed with Dr. Mackel's interpretation of the MRI, agreed with his diagnosis, and recommended similar treatment. Plaintiff reported to Dr. Mackel that Dr. Jansen was "an idiot".
10. Prior to January 22, 2003 plaintiff had been working light duty at the Fresh Market. However, her attendance at work had diminished. Therefore on January 22, 2003 The Fresh Market sent her a letter asking her to return to her light duty work because The Fresh Market could accommodate her work restrictions. Plaintiff chose to act on the advice of her prior attorney and therefore she did not return to work. Plaintiff's claim that The Fresh Market told her to not return to work is deemed not credible. Plaintiff did not return to work until April 2, 2003.
11. Plaintiff worked less than one week before returning to Dr. Mackel. Dr. Mackel could find no basis for her complaints; however, he did take her out of work until May 1, 2005.
12. On April 22, 2005 Dr. Mackel issued new work restrictions equivalent to the ones in place prior to April 11, 2005. It is unclear when and how these were communicated to plaintiff.
13. On May 1, 2005, plaintiff completed her FCE and met with Dr. Mackel. They discussed the April 22, 2005 work restrictions. Dr. Mackel left those restrictions in place. Dr. Mackel again informed plaintiff that she did not need surgery.
14. On May 2, 2005 The Fresh Market sent plaintiff a letter informing her once again they had work available for her. Plaintiff testified that she decided to end her employment with The Fresh Market rather than return to work.
15. After having left The Fresh Market, plaintiff did not apply for other employment. There is no evidence that she was unable to work during this time period. The FCE results showed that she was able to work an 8-hour day at the medium level of work.
16. Subsequently, plaintiff continued studying for a real estate license and took and passed the licensing test. She received her license as of July 7, 2003 and began working on that date as a real estate agent. She received her first commission on or around October 1, 2003, and since that date her earnings have been equal to or greater than her earnings at The Fresh Market.
17. After the May 1, 2003 visit, Dr. Mackel sent plaintiff's medical records to Dr. Webb at Bowman Gray to facilitate additional treatment. Dr. Webb called Dr. Mackel's office and agreed with Dr. Mackel's treatment and said that there was nothing further he could offer for plaintiff.
18. On November 26, 2003, Dr. Robyn Peckham saw plaintiff for a third opinion evaluation as to treatment. His particular findings as to the cause of her symptoms included medial collateral ligament laxity, which was expected to be traumatic in origin with a history of suggesting causation at the time of the work-related injury on December 10, 2002, and a popliteal cyst that was not expected to be related to the work-related injury and whose significance in the pain syndrome was undetermined.
19. Dr. Peckham recommended treatment for plaintiff to include a brace and exercises. Plaintiff used, and continues to use, the brace. While wearing the brace she feels that her stability is improved. However, when not wearing it she feels that her knee still gives way.
20. On September 22, 2004 plaintiff followed up with Dr. Peckham. Dr. Peckham felt plaintiff had MCL laxity, and for the first time mentioned possible ACL laxity. Dr. Peckham felt she needed a knee arthroscopy with possible ACL and/or MCL reconstruction.
21. Subsequently Dr. Peckham ordered another MRI. As with the previous MRI, this second MRI showed that the cruciate and collateral ligaments were grossly intact, as were the menisci. Other than pre-patellar bursitis and the unrelated cyst, the MRI was normal and no significant acute intra-articular pathology was found. Plaintiff has not followed up with Dr. Peckham after this MRI.
22. Plaintiff has seen Dr. Mackel since the second MRI was performed. Dr. Mackel evaluated plaintiff on January 4, 2005. He could find no objective findings to support her pain symptoms. He indicated that he might consider an arthroscopic evaluation merely to try to convince plaintiff that there was nothing wrong with her leg.
23. Dr. Mackel testified via deposition that he did not believe that plaintiff needed surgery to her left knee. He testified that he believes that her current problems are more likely than not a result of pre-existing conditions and were not the result of her work injury. He further testified that while he did not believe that she had a ligament problem, if she did have a ligament problem then he felt that it was unrelated to the work injury. The parties did not depose Dr. Peckham.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to her left knee on December 10, 2002. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to temporary total/partial benefits through January 21, 2003. N.C. Gen. Stat. § 97-29.
3. Plaintiff's decision not to return to light duty work was the cause of her loss of wages from January 22, 2003 through April 1, 2003. Therefore, plaintiff is not eligible for benefits during that time period. N.C. Gen. Stat. §§ 97-29 and 97-32.
4. Plaintiff returned to work on a trial basis on April 2, 2003. She worked nine days and then was taken out of work by her treating physician. The undersigned conclude that plaintiff remained disabled until May 1, 2003. N.C. Gen. Stat. § 97-29.
5. On May 1, 2003 Dr. Mackel released plaintiff with work restrictions of a forty-hour week with no deep knee bends and no climbing ladders. As of May 2, 2003 The Fresh Market offered work suitable to plaintiff's restrictions. Plaintiff chose to not accept this suitable employment, and therefore was terminated for misconduct in failing to report to work. Plaintiff is disqualified for temporary benefits starting May 2, 2003 due to her failure to accept employment suitable to her capacity. N.C. Gen. Stat. §§ 97-29, 97-32.
6. As of July 7, 2003 plaintiff was gainfully employed as a real estate agent at an income equal to or greater than her previous income, and therefore no longer had any loss of wage earning capacity as a result of her work injury. N.C. Gen. Stat. § 97-29.
7. Plaintiff has failed to prove that she needs additional medical treatment for her left knee. Dr. Peckham's conclusions as to causation do not rise to the level of proof necessary to establish compensability. The undersigned give greater credibility to the testimony of Dr. Mackel. N.C. Gen. Stat. §97-25.
8. Defendants have shown by the greater weight of the evidence that plaintiff does not need additional medical treatment. Defendants have shown that the arthroscopic procedure discussed by Dr. Mackel will not effect a cure, provide relief, and/or lessen the period of disability. In addition, the greater weight of the evidence shows that any other surgical procedure she might need, such as ligament repairs, is not as a result of the work injury. As to any ongoing symptoms, the greater weight of the evidence demonstrates that those symptoms are not the result of the injury. N.C. Gen. Stat. § 97-25.
9. Plaintiff reached maximum medical improvement on or around May 1, 2003, and has no permanent partial impairment as a result of her injury. N.C. Gen. Stat. § 97-31.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following:
 AWARD
1. Defendants shall pay plaintiff temporary total benefits at the rate of $213.33 per week for the time period of December 10, 2002 through January 21, 2003 and from April 2, 2003 through May 1, 2003, subject to a credit for any wages received during those time periods.
2. Defendants shall pay for all medical treatment plaintiff received from the date of injury through her last visit with Dr. Mackel.
3. Defendants are not responsible for any additional medical treatment to plaintiff's left knee in that any current ongoing problems with plaintiff's knee are not related to the compensable injury by accident.
4. Defendants shall pay the costs, including an expert witness fee of $800.00 to Dr. David F. Mackel if not already paid by prior order.
This the __ day of September, 2006.
 S/_____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER